### CHARLIE GROGANS v. THE STATE.

No. 15163. Delivered May 4, 1932.
Rehearing Denied June 8, 1932.
Reported in 50 S. W. (2d) 290.

504

The opinion states the case.

*Charles B. Walker* and *W. J. Baldwin,* both of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, Judge.—Conviction for rape; penalty, death.

A negro man having a single-barreled shotgun in his hands, in the nighttime, approached a car in which were prosecutrix, Miss Reed, and a Mr. Burke. We see no need for setting out facts other than those pertinent to the issues necessary to be discussed in order to make clear our decision. Miss Reed testified positively that by force and the use and exhibition of said gun appellant ravished her, her private parts being penetrated by his male organ. She was positive in her identification of appellant as her assailant, as was also her companion Mr. Burke. The assault was on a street or road which was muddy. It took place soon after 8 p. m. on the 21st of July. A number of witnesses testified that they saw appellant in the late afternoon of said day and about dusk thereof, not far from the scene of said assault, and that he had a gun similar to that described as in his possession at the time of the alleged rape. Appellant's brother, who seems to have lived in the same house with him, was used as a state witness, and testified that appellant had a shotgun of description identical with the one referred to by the other

witnesses, and that appellant came to his home about 11 o'clock of the night of said assault, and had something in his hand which witness said looked like a stick, but he could not identitfy it. This witness said the next morning he cleaned the gun of his brother and observed mud on it.

Appellant's theory was that of alibi, and that the offense was committed by a negro named Hines, to whom appellant said he had loaned his gun on the afternoon preceding the night of the assault, and that about 10:30 or 11 o'clock that night Hines came to the house where appellant resided and brought said gun back. Appellant also denied being out with the gun on that afternoon. In its rebuttal the state produced Hines, who testified that he did not borrow appellant's gun, had never had it in his possession, did not take it to appellant's place on that night, told where he was about the hour of the ravishment, and was corroborated in these statements by other witnesses who were produced and gave testimony. Appellant introduced a woman named Buchanan, who testified that during some part of Monday night appellant was at her house for some hours. This witness was stood aside for some purpose, and was then placed upon the witness stand again, and in her testimony then given seems to have taken the position that appellant was at her house on Tuesday night, which was the night of the alleged rape. We regard the testimony in the case as conclusively establishing appellant's guilt.

We find six bills of exception. Nos. 1, 2 and 3 complain of the refusal of special charges, one seeking to have the law of aggravated assault, and another the issue of assault to rape submitted to the jury,— and the other presenting exceptions to the court's charge for its failure to submit the law of aggravated assault and assault with intent to rape. We find nothing in the record justifying or calling upon the court to submit the law of such issues. Miss Reed testified on direct examination to positive penetration by the accused. On cross-examination she admitted that when first questioned by the prosecuting attorney about the matter she said she was not penetrated. However she explained that she did not know what penetration meant until it was explained to her, and that this was what caused her to make the statement to the prosecuting attorney in her first conversation with him. We find nothing in this to call for a charge on aggravated assault or assault to rape.

Bill of exception No. 4 is in question and answer form, but in death penalty cases we are not inclined to apply the strict rule laid down. This bill sets out a number of questions and answers to and by prosecutrix relating to whether appellant had on boots or shoes at the time of the assault. To the first question, she said she did not know whether he had on boots or shoes. To the next, she answered that she did not tell the sheriff the man had on boots. To the next, she said she never told anyone that he had on boots. The next question was: "Q. He had on lace high boots; high boots? You saw him with those boots on?" The state

objected, saying, in substance, that the witness had three times answered the question. The bill is approved with the statement by the court that the question objected to had already been answered. No error appears.

Bill of exception No. 5 sets up misconduct of the jury, the specific averment being that jurors discussed the testimony before they received the charge of the court. This being alleged in the motion for new trial, the court heard evidence when the motion was presented. Ten jurors seem to have testified. The only thing that occurred in the jury room was that Mr. Savino, a juror, at some stage of the trial and before the charge was read said "that Buchanan woman certainly loved to talk," evidently referring to the woman who said appellant was at her house on the night of the alleged assault. It was further shown that some one informed Mr. Savino that they were not to discuss the case at that time, and nothing further was said. This is no such misconduct of the jury as would lead to any belief that appellant was denied a fair and impartial trial.

Bill of exception No. 6 presents objection to the introduction in evidence of a single-barreled shotgun, the ground of objection being that the gun had not been identified as that of appellant. It was shown to be the gun gotten from appellant's brother the morning after said assault, and the brother testified that it was appellant's gun, or that he had one exactly like it. Appellant seems also to have identified the gun as the one which he loaned to Hines the afternoon before the assault. Prosecutrix and her companion. both said a gun exactly like that introduced in evidence was in possession of appellant the night of the alleged assault. We see no error in its admission in evidence.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—In his motion for rehearing the appellant stresses his contention that, by bill of exception No. 4, prejudicial error was disclosed. The bill relates to the cross-examination of Gladys Reed, the prosecutrix. During her cross-examination counsel propounded the following question: "He had on lace high boots; high boots? You saw him with those boots on?" Objection was. made that the inquiry was repetition; that the witness had three times made answer to the same question. The bill of exception shows that in the cross-examination the witness had given substantially the same testimony as that called for in the question that was sustained.

The state's witness Calvin Frederick testified that he saw the appellant near the place where the assault took place at a time shortly before it was claimed by the prosecutrix that it did take place; that the appellant at the time had a shotgun in his possession. The identity of the

appellant at the time and place mentioned and the identity of the gun were circumstances relied upon by the state. On cross-examination the witness said that according to the best of his recollection, the appellant at the time was wearing boots,—an ordinary pair of boots laced up. Appellant contends that he expected a negative answer from the witness. The appellant's contention is illustrated by the following quotation from the motion for rehearing: "The answer expected to be given by the prosecutrix was simply 'No.' This defendant had every reason to expect that such an answer would be given because of other testimony of the same witness, to-wit: Testimony that when the attacker approached, the night was brightly illuminated by the moon, and that she had never told any one that her attacker wore boots, not even the county attorney. This evidence shows that the prosecutrix had a good opportunity to observe whether the attacker wore boots, and if she did not tell even the county attorney such a pertinent fact of identity, it is reasonable to suppose that she never saw boots on the negro."

From the statement of facts, it appears that on cross-examination the prosecutrix gave the following testimony: "I recognized this negro when he first came up to the car. I could see him well enough at that time to know him. It was a bright moonlight night. He had a hat on his head. He had his hat on. It was a crushed down at the top. It was just a flat-top hat, and he had something around his head, some sort of bandage. The bandage was wrapped around his head and his hat was on one side. * * * I don't know whether he had on shoes or boots. I didn't pay much attention to his feet. I couldn't say whether he had on shoes or boots. I don't know whether he had on shoes or boots. I did not tell the Sheriff that he had on boots. * * * I never did tell any one that. I, never, at any time, told any one that he had on lace high boots, or high boots. I did not tell any one that he had on high boots. I have talked to a great many about it since it happened. I talked with some one about it that night. I talked to Mr. Hammonds that night. Mr. Hammonds was the first man there. He is a Deputy Sheriff here in Beaumont. * * * I gave Mr. Hammons a description of the negro that night. I did not tell Mr. Hammonds that the negro wore boots."

We perceive no error in the ruling of the court; nor is it thought that the ruling injured the accused. It is manifest that the prosecutrix had definitely claimed a number of times that she did not know whether the appellant wore boots and disclaimed any knowledge upon the subject. This appears both from the bill of exception and statement of facts. The identity of the appellant at the time of the assault was vouched for by both the prosecutrix and her companion, Spencer Burke. By their testimony the weapon or gun possessed by the appellant and used by him in the assault was identified. The assault was made upon a bright moonlight night between eight and nine o'clock. The prosecutrix and her

companion were in an automobile when the appellant appeared and presented a gun. By threats he compelled Burke to get out of the automobile. After he was forced out of the car, Burke fled and by telephone reported the assault to an officer. The prosecutrix was positive in her declaration that her female organ was penetrated by the appellant's male organ. He shoved her down, pushed aside her "step-ins," and accomplished the rape.

On cross-examination, the prosecutrix testified that she first talked to Mr. Scurlock, the district attorney, and told him that the negro did not penetrate her. She explained on the witness stand that she did not know the meaning of the word "penetration;" that she did not understand what he meant; that she was twenty-four years of age and had never had any experience of that kind and did not know what penetration meant until it was explained to her.

We perceive no testimony reducing the offense committed to aggravated assault. The testimony of the prosecutrix, if believed, shows all the elements of rape, including the assault and penetration. Appellant denied the assault in toto. On the subject, see Dusek v. State, 48 Texas Crim. Rep., 519, 89 S. W., 271; Charles v. State, 81 Texas Crim. Rep., 457, 196 S. W., 179.

The motion for rehearing is overruled

*Overruled.*